**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC FELIX, an individual, on behalf of himself and others similarly situated,<br>    Plaintiff,<br>v.<br>WM. BOLTHOUSE FARMS, INC.,<br>    Defendant. | Case No.: 1:19-cv-00312-AWI-JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. 25) |

    Eric Felix seeks preliminary approval of a class action settlement reached with WM. Bolthouse Farms, Inc. (Doc. 25.) Plaintiff requests: (1) preliminary approval of the settlement, (2) approval of the remaining settlement provisions, (3) approval of the proposed class notice, (4) setting the settlement administration deadlines, (5) appointment of JND Legal as the settlement administrator, and (6) a final approval hearing. (Doc. 25 at 8.) The Court has considered the proposed settlement between the parties, and the proposed class notice and documents. For the following reasons, Plaintiff's motion for preliminary approval of class settlement is **GRANTED**.

## **BACKGROUND**

    Felix filed this action against Defendant on March 7, 2019. (Doc. 1.) In the complaint, Plaintiff alleged that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 b(b)(2)(A)(i), by requiring Plaintiff and the FCRA Class Members' to execute a "Consent to Request Consumer Report & Investigative Consumer Report Information" form to permit Sterling Infosystems Inc. to obtain and

use consumer report information for employment purposes for Plaintiff and all the FCRA Class Members, and Defendant therefore obtained consumer reports regarding Plaintiff and the Class Members without proper authorization in violation of 15 U.S.C. § 1681 b(b)(2)(A)(ii). The complaint further alleged Defendant failed to provide lawful meal and rest breaks to the proposed California Class Members.

On May 3, 2019, Defendant filed a motion to dismiss the complaint in part and to strike Plaintiff's third and fourth causes of action. (Doc. 10.) Subsequently, on May 20, 2019, Plaintiff filed his first amended complaint removing his third and fourth cause of action. (Doc. 12.) The first amended complaint alleges claims for (1) violation of the Fair Credit Reporting Act for failure to make proper disclosures, 15 U.S.C. § 1681 b(b)(2)(A)(i); and (2) violation of the Fair Credit Reporting Act for failure to obtain proper authorization, 15 U.S.C. § 1681 b(b)(2)(A)(ii).

The parties exchanged initial discovery disclosures, and engaged in extensive discussions about their respective positions and the information and data needed to properly evaluate the merits of the claims alleged. The parties reached a proposed class action settlement on September 6, 2019 through arms-length direct negotiations, now submitted to this Court for preliminary approval.

The first amended complaint defined the class as: "All applicants in the United States who filled out WM. BOLTHOUSE FARMS, INC.'s standard "Consent to Request Consumer Report & Investigative Consumer Report Information" form at any time during the period beginning five (5) years prior to the filing of this action to the present." (Doc. 12 at 3.) The Settlement Class, which includes approximately 1,245 individuals, is defined as: "all applicants in the United States who filled out WM. BOLTHOUSE FARMS, INC.'s standard 'Consent to Request Consumer Report & Investigative Consumer Report Information' form as administered by Sterling Infosystems Inc. during the Class Period." (Doc. 25-1 at 3.) The "Class Period" is March 17, 2017 to July 31, 2018. (Doc. 25 at 10.)

Plaintiff filed the motion for preliminary approval of the settlement now pending before the Court on November 8, 2019. (Doc. 25.)

///

///

**THE PROPOSED SETTLEMENT**

Pursuant to the proposed settlement (the "Settlement"), the parties agree to a gross settlement amount not to exceed $118,275.00. (Doc. 25 at 10; Doc. 25-2 at 6.)

**I.  Payment Terms**

The Settlement provides a maximum recovery of $118,275.00. (Doc. 25 at 10; Doc. 25-2 at 6.) If the Court approves the Settlement, the following estimates the breakdown of payments from this amount:

- $54,350.00 for estimated settlement funds to the Settlement Class (the "Net Settlement Amount");
- $18,500 for administration costs regarding the Settlement;
- $5,000 for a Service Award to Plaintiff; and
- $39,425.00 for attorneys' fees and $1,000.00 in litigation costs.

(Doc. 25 at 10-11.)

Plaintiff asserts that the amount each Class Member receives from the Net Settlement Amount is contingent on the number of consumer reports obtained on individuals who remain in the Settlement Class. (Doc. 25 at 11.) The number of consumer reports obtained for each Class Member may differ, and thus Class Members may be entitled to more, or less, than others, based on the number of consumer reports obtained for each of them. (Doc. 25 at 11.) During the Class Period, Defendant estimated there to be approximately 1,245 members of the Settlement Class. (Doc. 25 at 11.) Based on this data, the parties anticipate the approximate gross payment per class member on average will be $95.00 with an approximate net payment on average of $43.65. (Doc. 25 at 11.) According to Plaintiff, this is a non-reversionary, total payout Settlement. (Doc. 25 at 11.) Any funds remaining in the Gross Settlement Amount due to uncashed Settlement checks (after a 180-day negotiability period) will be remitted to the California Legal Aid Fund. (Doc. 25 at 11.)

**II.  Releases**

Class Members will release Defendant and others "from any and all claims of any kind whatsoever, whether known or unknown, whether based on common law, regulations, statute, or a constitutional provision, under state, federal or local law, arising out of the allegations made in the

First Amended Complaint and that reasonably arise, or could have arisen, out of the facts alleged in the First Amended Complaint as to the Class Members, including, but not limited to, claims arising from the procurement of a consumer report on them by any of the Released Parties, and any other claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §16816, *et seq.,* whether willful, or otherwise, for declaratory relief, statutory damages, punitive damages, costs, and attorneys' fees. Notwithstanding the foregoing, nothing in the Settlement releases any claims that cannot be released as a matter of law." (Doc. 25 at 12, Doc. 25-2 at 21-22.) According to Plaintiff, the release is narrowed to the facts and claims arising out of the operative complaint.

### III. Objections and Opt-Out Procedure

Any class member who wishes may file objections or elect not to participate in the Settlement. The Notice of Class Action Settlement explains the claims that are released as part of the Settlement. (Doc. 25-2 at 43.) In addition, it explains the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement. (Doc. 25-2 at 40-46.)

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

### I. Class Certification

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23 are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).

///

**A.     Rule 23(a) Requirements**

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156. If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### 1.     Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members"). Here, approximately 1,245 individuals are potential members of the class. (Doc. 25 at 15.) Therefore, the class is sufficiently numerous.

### 2.     Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "However, it is insufficient to merely allege any common question." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Commonality must be shown by a "common contention" that is "of such a nature

that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 338.

Plaintiff contends that under the FCRA, an employer, or prospective employer, cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless . . . a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." (Doc. 25 at 16, citing 15 U.S.C. § 1681 b(b)(2)(A)(i)). Plaintiff asserts that the question of law and fact common to the proposed class that predominate over questions that may affect individual class members are: (a) whether Defendant's standard FCRA disclosure meets 15 U.S.C. § 19 § 1681 b(b)(2)(A)(i)' s "clear and conspicuous disclosure" requirement; (b) whether Defendant's standard FCRA disclosure is "in a document that consists solely of the disclosure"; (c) whether Defendant acquires applicants' consumer reports without authorization in violation of 15 U.S.C. § 1681 b(b)(2)(A)(ii); and (d) whether Defendant "willfully" violated the FCRA pursuant to 15 U.S.C. § 1681n. (Doc. 25 at 16.)

Plaintiff contends that all members of the class executed the same FCRA disclosure form and suffer from the same types of injury arising from the same conduct committed by Defendant in regard to the claims alleged. (Doc. 25 at 16.) Because of these common factual and legal issues, the Court finds the commonality requirement is satisfied.

### 3. Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d

1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiff alleges that on or about May of 2017, he was required to sign a standardized form labeled "Consent to Request Consumer Report & Investigative Consumer Report Information," provided by Sterling Infosystems Inc., a company hired by Defendant to obtain a consumer report verifying employees' background and experience. (Doc. 25 at 17.) According to Plaintiff, Defendant required all applicants to complete the same form that violated the FCRA's prohibition against including extraneous information in a required disclosure. (Doc. 25 at 17.) Plaintiff therefore contends that the claims of Plaintiff and the class arise from the same alleged course of conduct by Defendant and are based on the same legal theories. (Doc. 25 at 17.) Although Defendant does not admit these allegations, for purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion that sufficient typicality exists. (Doc. 25 at 17.) Accordingly, the Court finds the typicality requirement is satisfied.

### 4. Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Plaintiff states that Plaintiff and class counsel do not have interests antagonistic to those of the Settlement Class. (Doc. 25 at 18.) Plaintiff contends that, to the contrary, Plaintiff shares the same interest-i.e., recovering damages resulting from alleged violations of Defendant's FCRA obligations. (Doc. 25 at 18.) Plaintiff also reports that class counsel have extensive experience prosecuting similar such class actions. (Doc. 25 at 18.) Additionally, Plaintiff reports that Kingsley & Kingsley is experienced in prosecuting and defending employment and consumer matters, and the firm has focused its practice since 2000 on complex litigation including wage and hour and consumer class

actions. (Doc. 25 at 18.) Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Eastern, Central, and Southern California, and a list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet. (Doc. 25 at 18, Doc. 25-1 at 7-9.) Thus, Plaintiff contends that Plaintiff and class counsel are adequate representatives for the class. (Doc. 25 at 18.) Plaintiff also reports that the firm has diligently and aggressively pursued this action. (Doc. 25 at 18.) Therefore, the Court finds the class counsel to be adequate.

### B. Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b). Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiff asserts certification is appropriate under Rule 23(b)(3), which requires finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Plaintiff contends that the predominance requirement is satisfied because, "as in numerous other class actions, Plaintiff's claim is premised on his allegation Defendant maintained a uniform policy of providing the Settlement Class with a standardized form facially violating the FCRA, and Plaintiff's claim is based on factual and legal questions about Defendant's policy that are not only common to the Settlement Class, but predominate under FRCP 23(e)." (Doc. 25 at 19.) In addition, Plaintiff asserts that the superiority requirement is met because "given that there are over 1,000 putative class members, each of whom, on their own, can only recover a small amount of damages for the alleged violations, a class action is the superior method for adjudicating their claims as it will reduce litigation costs and promote greater efficiency." (Doc. 25 at 19.) Therefore, the Court finds certification of the conditional settlement class is proper under Rule 23(b)(3).

### II. Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the

class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291 (internal quotation marks and citation omitted).

### A. Strength of Plaintiff's Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp 1379, 1388 (D. Az. 1989)). According to Plaintiff:

> There is risk associated with continued litigation, including the prospect that a class might not be certified, or a certified class may be significantly smaller than proposed. In the Lawsuit, of particular importance to determining the reasonableness of the Settlement are the significant liability questions regarding purported violations of the FCRA.
>
> While Plaintiff maintains his confidence in Defendant's liability for violation of the FCRA on two separate grounds, Plaintiff must acknowledge that Defendant's likely arguments posed risks. Defendant likely would have advanced an argument that Plaintiff lacked standing because he did not suffer, or allege, a concrete injury under the Supreme Court's *Spokeo* decision. Because of the uncertainty regarding FCRA liability, the $118,275.00 Gross Settlement Amount is more than reasonable.
>
> Risks and uncertainties are also present regarding damages. In particular, Plaintiff seeks statutory damages under the FCRA ranging between $100 and $1,000 per violation. Defendant would have certainly argued the alleged violations were technical, and thus did not result in any injuries or damages. For example, in *Hillson v. Kelly Services,* E.D. Mich. No. 2: l 5cvl 0803, 2017 WL 279814, at *7-8 (E.D. Mich. Jan. 23, 2017), the court preliminarily approved a settlement awarding $19 to each class member for an alleged FCRA standalone disclosure

> violation. In *Hillson,* the court assumed each individual class member would recover $100 at trial, and observed, "once the $100 award is discounted by the likelihood of success at trial (which is conceivably in the ballpark of 19%), the amount of recovery under the settlement appears reasonable." *Id.* at 2 *7.
>
> Here, estimating the average number of reports procured for each Class Member to be 1, the proposed Gross Settlement Amount represents 95% of Plaintiff's likely recovery at trial if Defendant's conduct was not found to be willful (1,245 reports x $100), with an average gross settlement amount of $95 to each proposed class member. Thus, the proposed settlement falls well above the approved discounted range for similar class settlements.

(Doc. 25 at 25-26, citations and footnotes omitted.) Accordingly, this factor weighs in favor of preliminary approval of the Settlement.

### B. Risks, Expenses, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation. The time and expense of continued litigation could outweigh any additional recovery. According to Plaintiff:

> Defendant denies all of the contentions alleged in Plaintiff's complaint, asserts many defenses thereto, and denies any wrongdoing or legal liability arising out of the conduct allege[d]. Defendant concluded that this action may be settled in the manner and on the terms and conditions in the Settlement to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

(Doc. 25 at 23.) Plaintiff asserts that "while Class Counsel believe Plaintiff's claims are meritorious, they are experienced class action litigators, and understand the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many months or years." (Doc. 25 at 26.) On the other hand, the proposed settlement provides for "substantial, prompt, and efficient relief" for the class. (Doc. 25 at 27.) Therefore, this factor weighs in favor of approval of the Settlement.

### C. Risk of Maintaining Class Status throughout the Trial

Plaintiff notes that this case has not been certified to be tried as a class action. (Doc. 25 at 27.) While Plaintiff believes there is strong evidence to support certification of the proposed class, Plaintiff states that certification is always hard fought and subject to judicial discretion. (Doc. 25 at 27.) Moreover, Plaintiff notes that in class actions, decertification is always a possibility. (Doc. 25 at 27.)

Plaintiff reports that in attempting to certify a class, the parties would need to conduct multiple depositions, including person(s) most knowledgeable regarding Defendant's hiring and background check policies. (Doc. 25 at 27.) Plaintiff contends that there is a risk for both sides as to what these depositions will reveal and whether they will support class certification to the extent expected. (Doc. 25 at 27.) Due to the risk to the claims of class members, this factor supports approval of the Settlement.

### D. Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

The maximum recovery is $118,275.00. (Doc. 25 at 10.) During the Class Period, Defendant estimated there to be approximately 1,245 members of the Settlement Class. (Doc. 25 at 11.) Based on this data, the parties anticipate the approximate gross payment per class member on average will be $95 with an approximate net payment on average of $43.65. (Doc. 25 at 11.) In addition, this is a non-reversionary, total payout Settlement. (Doc. 25 at 11.) Any funds remaining in the Gross Settlement Amount due to uncashed Settlement checks (after a 180-day negotiability period) will be remitted to the California Legal Aid Fund. (Doc. 25 at 11.) Accordingly, the Court finds the amount offered supports approval of the Settlement.

### E. Extent of Discovery Completed and Stage of the Proceedings

Plaintiff reports that "[t]he Parties arrived at this settlement only after initial discovery, extensive investigation and discussion, and a careful evaluation of the law, risks, and all information substantiating the amount of damages reasonably likely to be awarded to the Class were the trier of fact to find Defendant was liable." (Doc. 25 at 23-24.) According to Plaintiff: "Class Counsel conducted a thorough investigation into the facts of the claims alleged. The agreement to settle did not occur until Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation." (Doc. 25 at 33-

34.) Consequently, this factor supports preliminary approval of the Settlement.

### F. Experience and Views of Counsel

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. Plaintiff reports that the parties were represented by experienced class action counsel throughout the negotiations. (Doc. 25 at 23.) Plaintiff states that class counsel regularly litigates and tries FCRA class actions, and have considerable experience settling such actions, and Morgan Lewis, which operates a highly-respected nationwide class action defense practice, represented Defendant. (Doc. 25 at 23.) Plaintiff's counsel believes that the proposed settlement is fair and reasonable. (Doc. 25 at 24, Doc. 25-1 at 9-10.) Defendant and its counsel also agree that the Settlement is fair and in the best interest of the class members. (Doc. 25 at 24.)

### G. Reaction of Class Members to the Proposed Settlement

Plaintiff has agreed to the terms of the Settlement Agreement. However, this factor shall be revisited prior to final approval of the Settlement because Class Members have not yet received notice of the Settlement terms.

### H. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Plaintiff reports that "[t]his settlement is the result of adversarial, non-collusive, and arms-length negotiations." (Doc. 25 at 23.) Defendant and its counsel also agree that the Settlement is fair and in the best interest of the class members. (Doc. 25 at 24.) Because there is no indication the agreement was the product of collusive conduct, this factor weighs in favor of approval of the Settlement.

### I. Attorneys' Fees

Class counsel requests attorneys' fees that total $39,425.00, which represents 33% of the $118,275.00 common fund. (Doc. 25 at 30.) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

12

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent on the action. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily. The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

### J. Class Representative Enhancement

The Settlement provides that Plaintiff may seek an enhancement payment "up to" $5,000. (Doc. 25-2 at 42.) Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

The documents explain that the enhancement is to be given to Plaintiff for his participation in all stages of the litigation and for taking on the risk of litigation. (Doc. 25-2 at 46, Doc. 25-3 at 2-3.) Plaintiff declares that he has spent significant time throughout this class action working with Class Counsel. (Doc. 25-3 at 2.) He reports that he "assisted the attorneys with investigation and gathering of information including discussing [his] work experience and the experience of others that [he] had observed while working for Bolthouse and provided all relevant employment documents in [his]

possession." (Doc. 25-3 at 2.) Plaintiff also states that he maintained regular contact with Class Counsel and assisted by providing information and making himself available as needed. (Doc. 25-3 at 2.) Specifically, Plaintiff reports that his time included "researching and identifying competent counsel with relevant expertise, providing information to Class Counsel regarding the claims at issue, compiling documents, conducting several meetings and telephone conferences with his attorneys to discuss the status of the case and the theories of liability, and reviewing all relevant case documents." (Doc. 25 at 33.) Additionally, "Plaintiff incurred personal risk by bringing the Lawsuit; he could have been responsible for Defendant's costs, and his potential employment opportunities may have been impacted by his public prosecution of the Lawsuit." (Doc. 25 at 33.) Plaintiff also states that he "always maintained the best interest of the Class while performing [his] Class Representative duties." (Doc. 25-3 at 3.) Given the actions taken on behalf of the class and the flexibility for an award *up to* $5,000, approval of a class representative enhancement is appropriate.[1]

## APPROVAL OF CLASS NOTICE

A class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### I. Content of the Notice

Plaintiff has submitted the proposed Notice of Class Action Settlement (collectively, "Notice Packet"). (Doc. 25-2 at 39-48.) Upon review of the proposed Notice Packet, the Court finds the content is adequate. It provides information regarding the background of the action and claims asserted. (Doc.

---

[1] Plaintiff is cautioned that in his petition for final approval of the settlement he must provide specifics under oath as to how much time he spent on the action and how this time was spent. Vague assertions do not suffice.

25-2 at 39-40.) In addition, the Notice Packet explains the rights and procedures to receive a share of the Settlement, object to the Settlement, or elect not to participate in the Settlement, and will include the applicable deadlines. (Doc. 25-2 at 40-41.) The Notice Packet provides additional basic information, explains the Settlement benefits, and how to get a Settlement payment. (Doc. 25-2 at 41-44.) It also provides additional information on excluding oneself from the Settlement and objecting to the Settlement. (Doc. 25-2 at 44-46.) Finally, the Notice Packet provides information on the lawyers representing the class, the Court's Final Approval Hearing, and how to get more information about the Settlement. (Doc. 25-2 at 46-47.)

## II. Method and Administration of Notice Packet

The Settlement Administrator will establish the Settlement Fund, issue the funds, send W-9 forms, if needed, and 1099 forms, and send all required notices. (Doc. 25 at 13.) Within fourteen days entry of this Order, Defendant will give the appointed Settlement Administrator the Class List and Data. (Doc. 25-2 at 22.) Within fifteen days of receiving this data, the Settlement Administrator will mail the Notice Packets to all Class Members. (Doc. 25-2 at 23.) For any Notice Packet returned due to an incorrect address, the Settlement Administrator will re-send to the forwarding address and indicate the date of such re-mailing. (Doc. 25-2 at 23.) If no forwarding address is provided, the Settlement Administrator will attempt to determine the correct address and perform a re-mailing. (Doc. 25-2 at 23.)

Class members who desire to be excluded from the action may opt out from the Settlement within sixty days of mailing. (Doc. 25-2 at 24.) Similarly, Class Members who wish to object to the Settlement must mail a written objection to the Settlement Administrator within sixty days of mailing. (Doc. 25-2 at 25.)

## III. Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of this Court's preliminary approval and Final Approval Hearing, and deadlines for filing an Opt Out Statement or Objection to the Settlement. Likewise, the documents must be modified to include the relevant information, including the address and phone numbers of the Settlement Administrator. If Plaintiff intends to issue a Spanish language translation of the Notice Packet, they are reminded that

this Court requires a declaration that the Notice Packet was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice Packet.

**APPOINTMENT OF CLAIMS ADMINISTRATOR**

The parties propose that the Court appoint JND Legal to serve as the Settlement Administrator. (Doc. 25 at 13.) Under the terms of the Settlement, the Settlement Administrator "will be responsible for establishing the Settlement Fund and issuing (a) all funds by way of negotiable instrument from the Global Settlement Fund, (b) W-9 Forms (if required), (c) 1099 forms; and (d) all required notices under the Class Action Fairness Act 2005, 28 U.S.C. § 1711, *et seq.*" (Doc. 25-2 at 21.) The Settlement Administrator's fees are to be paid from the Global Settlement Fund. (Doc. 25 at 13, Doc. 25-2 at 21.) The Settlement Administrative Costs are estimated to be no more than $18,500. (Doc. 25 at 13, Doc. 25-2 at 42.) Based upon the recommendation and request of the parties, JND Legal is appointed as the Settlement Administrator.

**CONCLUSION AND ORDER**

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test. Accordingly, the Court **ORDERS**:

1. Plaintiff's request for conditional certification is **GRANTED**, and the Settlement class is defined as follows: "All applicants in the United States who filled out WM. BOLTHOUSE FARMS, INC.'s standard 'Consent to Request Consumer Report & Investigative Consumer Report Information' form as administered by Sterling Infosystems Inc. during the Class Period of March 17, 2018 through July 31, 2018."

2. Eric Felix is **APPOINTED** as the representative of the Settlement Class;

3. Eric B. Kingsley and Kelsey M. Szamet of Kingsley & Kingsley APC and Emil Davtyan of Davtyan Professional Law Corporation are **APPOINTED** as attorneys for the Settlement Class;

4. JND Legal Administration is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

5. The Class Representative enhancement request is **GRANTED** preliminarily up to the amount of $5,000, subject to a petition and review at the Final Approval Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval Hearing;

6. Class Counsel's request for fees that total $39,425.00, which represents 33% of the $118,275.00 common fund are **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval Hearing;

7. The petition for attorneys' fees and for the class representative enhancement fee shall be filed no later than **February 21, 2020**;

8. Costs of settlement administration shall not exceed $18,500;

9. The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **January 13, 2020**;

10. The parties **SHALL** provide the Settlement Administrator with the Class List and Data no later than **January 27, 2020**;

11. The Settlement Administrator **SHALL** mail the approved Notice Packet no later than **January 28, 2020**;

12. Class Members who desire to be excluded from the action may opt out from the Settlement within sixty days, or no later than **March 6, 2020**;

13. Class Members who wish to object to the Settlement must mail a written objection to the Settlement Administrator within sixty days, or no later than **March 6**, **2020**;

14. A Final Approval Hearing shall be held on **March 27**, **2020**, at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, CA 93301. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the Class Members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees.

15. Class Members may appear at the hearing on **March 27, 2020**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

16. The Court reserves the right to vacate the Final Approval Hearing if no comments or objections are filed with this Court on or before **March 6, 2020**;

17. The Court reserves the right to continue the Final Approval Hearing without further notice to members of the Settlement Class; and

18. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated: __**January 7, 2020**__     __**/s/ Jennifer L. Thurston**__
UNITED STATES MAGISTRATE JUDGE