**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERIC FELIX, an individual, on behalf of himself and others similarly situated, | Case No.: 1:19-cv-00312-AWI-JLT |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT AND GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE INCENTIVE PAYMENT |
| v. | |
| WM. BOLTHOUSE FARMS, INC., | |
| Defendant. | |
| | (Doc. 36) |

Eric Felix seeks final approval of a class action settlement reached with Defendant WM. Bolthouse Farms, Inc. (Doc. 36.) In addition, Plaintiff seeks an award of attorneys' fees and costs from the Settlement fund; a class representative enhancement; and costs for settlement administration. (Doc. 36-1.) Defendant does not oppose these requests, and no objections were filed by class members.

Because Plaintiff meets his burden to demonstrate certification of the Settlement Class is appropriate under Rule 23 of the Federal Rules of Civil Procedure and that the terms of the Settlement are fair, adequate, and reasonable the Court recommends Plaintiff's request for final approval of the Settlement be **GRANTED**. In addition, the Court recommends Plaintiff's request for attorneys' fees be **GRANTED** in the amount of $39,425.00; costs be awarded in the amount of $931.11; settlement administration costs be granted in the amount of $18,500.00; and Plaintiff's request for a class representative incentive payment be **GRANTED** in the modified amount of $2,500.00.

1

1

## BACKGROUND

2        Mr. Felix filed this action against Defendant on March 7, 2019. (Doc. 1.) In the complaint,

3   Plaintiff alleged that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 b(b)(2)(A)(i),

4   by allegedly requiring Plaintiff and the FCRA Class Members to execute a "Consent to Request

5   Consumer Report & Investigative Consumer Report Information" form to permit Sterling Infosystems

6   Inc. to obtain and use consumer report information for employment purposes for Plaintiff and all the

7   FCRA Class Members, and Defendant therefore obtained consumer reports regarding Plaintiff and the

8   Class Members without proper authorization in violation of 15 U.S.C. § 1681 b(b)(2)(A)(ii). The

9   complaint further alleged Defendant failed to provide lawful meal and rest breaks to the proposed

10  California Class Members.

11        On May 3, 2019, Defendant filed a motion to partially dismiss and strike Plaintiff's third and

12  fourth causes of action. (Doc. 10.) Subsequently, on May 20, 2019, Plaintiff filed his first amended

13  complaint removing his third and fourth causes of action. (Doc. 12.) The operative first amended

14  complaint alleges claims for (1) violation of the Fair Credit Reporting Act for failure to make proper

15  disclosures, 15 U.S.C. § 1681 b(b)(2)(A)(i); and (2) violation of the Fair Credit Reporting Act for

16  failure to obtain proper authorization, 15 U.S.C. § 1681 b(b)(2)(A)(ii).

17        The parties exchanged initial discovery disclosures, and engaged in extensive discussions

18  about their respective positions and the information and data needed to properly evaluate the merits of

19  the claims alleged. The parties reached a proposed class action settlement on September 6, 2019

20  through arms-length, direct negotiations, which was submitted to this Court for preliminary

21  approval.

22        The Court granted preliminary approval of the settlement on January 7, 2020. (Doc. 29.)

23  Following preliminary approval, Class Counsel coordinated with the Settlement Administrator to

24  ensure the proper dissemination of the Class Notice and closely monitored the notice process. (Doc. 36

25  at 10.)

26

## SETTLEMENT TERMS

27        Pursuant to the proposed settlement (the "Settlement"), the parties agree to a gross settlement

28  amount not to exceed $118,275.00. (Doc. 36 at 11; Doc. 36-3 at 6, Settlement ¶ 14.) The Settlement

Class is defined as follows:

> [A]ll applicants in the United States who filled out WM. BOLTHOUSE FARMS, INC.'s standard 'Consent to Request Consumer Report & Investigative Consumer Report Information' form as administered by Sterling Infosystems Inc. during the Class Period.

(Doc. 36 at 11, Doc. 36-3 at 10, Settlement ¶ 32.)

## I.      Payment Terms

The Settlement provides a maximum recovery of $118,275.00. (Doc. 36 at 11; Doc. 36-3 at 6, Settlement ¶ 14.) The following estimates the breakdown of payments from this amount:

- $54,350.00 for estimated settlement funds to the Settlement Class (the "Net Settlement Amount");
- $18,500 for administration costs regarding the Settlement;
- $5,000 for a service award to Plaintiff; and
- $39,425.00 for attorneys' fees and $931.11 in litigation costs.

(Doc. 36 at 11.)

Plaintiff describes that the amount each Class Member receives from the Net Settlement Amount is contingent on the number of consumer reports obtained on individuals who remain in the Settlement Class. (*Id*. at 11-12.) The number of consumer reports obtained for each Class Member may differ, and thus Class Members may be entitled to more, or less, than others, based on the number of consumer reports obtained for each of them. (*Id*. at 12.) As of the date of filing of the instant motion, Plaintiff states there are 1,225 Class Members (1,227 total individuals, with two exclusions). (*Id*.)

Based on this data and the anticipated Net Settlement Amount, the estimated approximate payment per Class Member, who completed Defendant's standardized form, is $37.38 if one consumer report was obtained and $74.76 if two consumer reports were obtained (*Id*.)

As this is a non-reversionary, total payout Settlement, any funds remaining in the gross settlement amount due to uncashed Settlement checks (after a 180-day negotiability period) will be remitted to California Legal Aid Fund. (*Id*.)

///

3

## II.      Releases

The release applies only to Settlement Class Members who do not request exclusion. (Doc. 36 at 12.) As of the date of filing of the instant motion, two individuals have requested exclusion. (*Id.*) As such, the release applies to 1,225 Settlement Class Members. (*Id.*) The Settlement provides that Class Members will release Defendant and others:

> from any and all claims of any kind whatsoever, whether known or unknown, whether based on common law, regulations, statute, or a constitutional provision, under state, federal or local law, arising out of the allegations made in the First Amended Complaint and that reasonably arise, or could have arisen, out of the facts alleged in the First Amended Complaint as to the Class Members, including, but not limited to, claims arising from the procurement of a consumer report on them by any of the Released Parties, and any other claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681b, *et seq.,* whether willful, or otherwise, for declaratory relief, statutory damages, punitive damages, costs, and attorneys' fees. Notwithstanding the foregoing, nothing in the Settlement releases any claims that cannot be released as a matter of law.

(Doc. 36 at 12-13, Doc. 36-3 at 21-22, ¶ 13.) According to Plaintiff, the release is narrowed to the facts and claims arising out of the operative first amended complaint. (Doc. 36 at 13.)

## III.      Objections and Opt-Out Procedure

Any class member who wished could file objections or elect not to participate in the Settlement. (Doc. 36-3 at 24-26, Settlement ¶¶ 5-7.) The Notice of Class Action Settlement explained the claims that are released as part of the Settlement. (Doc. 25-2 at 43; Doc. 36-3 at 43.) In addition, it explained the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement. (Doc. 25-2 at 40-46; Doc. 36-3 at 40-46.)

## IV.      Service of the Notice Packets and Responses Received

On January 7, 2020, the Court ordered the Settlement Administrator, JND Legal Administration, to "mail the approved Notice Packet no later than January 28, 2020." (Doc. 29 at 17, emphasis omitted.) The Court approved the proposed Class Notice on February 12, 2020. (Doc. 35.)

According to Jennifer Keough, the chief executive officer of JND Legal Administration, the Notice was mailed on February 14, 2020 via first-class U.S. Mail to 1,227 Class Members identified by Defendant. (Doc. 36-8 at 1-2, Keough Decl. ¶¶ 1, 4-5.) JND tracked 181 Notices that were returned as undeliverable. (*Id.* at 3, ¶ 7.) Ms. Keough reports that, of these, six were returned as undeliverable

4

with a forwarding address and were promptly re-mailed, and for the remaining undeliverable Notices, JND conducted advanced address research and received updated address information for 89 Class Members. (*Id.*) JND re-mailed the Notice to the 89 Class Members, and eight re-mailed Notices were returned as undeliverable. (*Id.*) Ms. Keough reports that as of April 5, 2020, 1,133 Class Members were mailed a Notice and they were not returned as undeliverable, representing 92% of total Class Members from the Settlement. (*Id.*, ¶ 8.)

Ms. Keough reports that JND did not receive any objections to the Settlement and two requests for exclusion from the class. (*Id.* at 4, ¶¶ 14, 16.) Likewise, the Court did not receive any objections to the Settlement.

## APPROVAL OF A CLASS SETTLEMENT

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

## I.      Class Certification

Class certification is governed by the Federal Rules of Civil Procedure, which provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). Under the terms of the Settlement, the proposed class is defined as:

> [A]ll applicants in the United States who filled out WM. BOLTHOUSE FARMS, INC.'s standard 'Consent to Request Consumer Report & Investigative Consumer Report Information' form as administered by Sterling Infosystems Inc. during the Class Period.

(Doc. 36 at 11, Doc. 36-3 at 10, Settlement ¶ 32.)

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). Here, the parties agree, for purposes of the Settlement, the criteria for certifying a settlement class are satisfied. (Doc. 36 at 24.)

### A.      Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

#### 1.      Numerosity

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations."  *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is not a specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members").  Here, "1,225 individuals comprise the Settlement Class." (Doc. 36 at 24, Doc. 36-8 at 2, Keough Decl. ¶¶ 4-16.)  Therefore, the numerosity requirement is satisfied.

#### 2.      Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Wal-Mart Stores*, 131 S. Ct.

at 2551.

In this case, Plaintiff contends that under the FCRA, an employer, or prospective employer, cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless . . . a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." (Doc. 25 at 16, citing 15 U.S.C. § 1681 b(b)(2)(A)(i)). Plaintiff previously asserted that the question of law and fact common to the proposed class that predominate over questions that may affect individual class members are: (a) whether Defendant's standard FCRA disclosure meets 15 U.S.C. § 19 § 1681 b(b)(2)(A)(i)' s "clear and conspicuous disclosure" requirement; (b) whether Defendant's standard FCRA disclosure is "in a document that consists solely of the disclosure"; (c) whether Defendant acquires applicants' consumer reports without authorization in violation of 15 U.S.C. § 1681 b(b)(2)(A)(ii); and (d) whether Defendant "willfully" violated the FCRA pursuant to 15 U.S.C. § 1681n. (Doc. 25 at 16.) Plaintiff also previously asserted that all members of the class executed the same FCRA disclosure form and suffer from the same types of injury arising from the same conduct committed by Defendant in regard to the claims alleged. (*Id.*) Accordingly, the Court finds the commonality requirement is satisfied for purposes of settlement.

### 3.     Typicality

This requirement requires a finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members.  *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when the named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Plaintiff alleges that in or about May 2017, he was required to sign a standardized form labeled "Consent to Request Consumer Report & Investigative Consumer Report Information" provided by Sterling Infosystems Inc., a company hired by Defendant to obtain a consumer report verifying employees' background and experience. (Doc. 36 at 25.) According to Plaintiff, Defendant required all applicants to complete the same form, which violated the FCRA's prohibition against including extraneous information in a required disclosure. (*Id*. at 25-26.) Plaintiff therefore contends that the claims of Plaintiff and the class arise from the same alleged course of conduct by Defendant and are based on the same legal theories. (*Id*. at 26.) Although Defendant does not admit these allegations, for purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion that sufficient typicality exists. (*Id*.) Accordingly, the Court finds the typicality requirement is satisfied.

### 4.    Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

#### a.    Class counsel

Plaintiff states that Plaintiff and Class Counsel do not have interests antagonistic to those of the Settlement Class. (Doc. 36 at 26.) Plaintiff contends that, to the contrary, Plaintiff shares the same interest-i.e., recovering damages resulting from alleged violations of Defendant's FCRA obligations. (*Id*.) Plaintiff also reports that Class Counsel have extensive experience prosecuting similar such class actions. (*Id*.) Additionally, Plaintiff reports that Kingsley & Kingsley is experienced in prosecuting and defending employment and consumer matters, and the firm has focused its practice since 2000 on complex litigation including wage and hour and consumer class actions. (*Id*.) Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Eastern, Central, and Southern California, and a list of representative cases that Kingsley & Kingsley has

handled is included in the accompanying declaration of Kelsey Szamet. (*Id.*; Doc. 36-2 at 8-14, Szamet Decl. ¶¶ 53-55.) Thus, Plaintiff contends that Plaintiff and Class Counsel are adequate representatives for the class. (Doc. 36 at 26.) Plaintiff also reports that the firm has diligently and aggressively pursued this action. (*Id.*) Therefore, the Court finds Class Counsel satisfies the adequacy requirement.

### b.      Class representative

Plaintiff sought appointment as the class representative, and asserted that he believes that he is able to represent the other employees well and that he has "always maintained the best interest of the Class while performing [his] Class Representative duties." (Doc. 36-9 at 2-3, Felix Decl. ¶¶ 3, 9.) Further, the parties do not identify any conflicts between Plaintiff and the other class members. Thus, it appears Plaintiff will fairly and adequately represent the interests of the class.

## B.      Certification of a Class under Rule 23(b)(3)

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266. Plaintiff asserts certification is appropriate under Rule 23(b)(3), which requires finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.      Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623). The Ninth Circuit explained, "a central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)). In this case, as Plaintiff asserts, the predominance requirement is satisfied because "Plaintiff's claim is based on factual and legal questions about Defendant's policy that are not only common to the Settlement Class, but predominate under FRCP 23 (e)," given the allegation that

Defendant maintained a uniform policy of providing the Settlement Class with a standardized FCRA form facially violating the FCRA. (Doc. 36 at 27.)

### 2. Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Pursuant to Rule 23(b)(3), the Court must consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

### a. Class members' interest in individual litigation and other cases

This factor is relevant when class members have suffered sizeable damages or have an emotional stake in the litigation. *See In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982)). Here, there is no evidence that the Class Members have an interest in pursuing or controlling separate cases. Plaintiff previously asserted that "given that there are over 1,000 putative class members, each of whom, on their own, can only recover a small amount of damages for the alleged violations, a class action is the superior method for adjudicating their claims as it will reduce litigation costs and promote greater efficiency." (Doc. 25 at 19.)  Moreover, the parties have not identified any other pending litigation related to Plaintiff's claims. Therefore, these factors weigh in favor of class certification.

### b. Desirability of concentrating litigation in one forum

Because common issues predominate on Plaintiff's class claims, "presentation of the evidence in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial economy." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011). Moreover, because the parties have resolved the claims through the Settlement, this factor does not weigh against class certification.

///

1                       c.     *Difficulties in managing a class action*

2         The Supreme Court explained that, in general, this factor "encompasses the whole range of

3 practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle*

4 *& Jacquelin*, 417 U.S. 156, 164 (1974). However, because the parties have reached a settlement

5 agreement, it does not appear there are any problems with managing the action. Therefore, this factor

6 weighs in favor of class certification.

7                   3.     Conclusion

8         Because the predominance and superiority requirements are satisfied, the Settlement Class is

9 maintainable under Rule 23(b)(3). Accordingly, the Court recommends that Plaintiff's request to

10 certify the Settlement Class be **GRANTED.**

11 **II.     Evaluation of the Settlement Terms**

12         Settlement of a class action requires approval of the Court, which may be granted after a

13 "finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is

14 required to ensure settlement is consistent with plaintiffs' fiduciary obligations to the class. *See*

15 *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth

16 several factors to determine whether a settlement agreement meets these standards, including:

17         the strength of plaintiff's case; the risk, expense, complexity, and likely duration of
        further litigation; the risk of maintaining class action status throughout the trial; the

18         amount offered in settlement; the extent of discovery completed, and the stage of the
        proceedings; the experience and views of counsel; the presence of a governmental

19         participant; and the reaction of the class members to the proposed settlement.

20 *Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the

21 product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458

22 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement

23 terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law

24 which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291 (internal quotation marks

25 and citation omitted).

26     **A.     Strength of Plaintiff's Case**

27         When evaluating the strength of a case, the Court should "evaluate objectively the strengths

28 and weaknesses inherent in the litigation and the impact of those considerations on the parties'

decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F.Supp 1379, 1388 (D. Az. 1989)).

"Plaintiff and his Counsel recognize that there are risks associated with Plaintiff's claims, especially Plaintiff's ability to establish Article III standing." (Doc. 36 at 15.) For example, Plaintiff reports that Defendants contended that Plaintiff cannot prove Article III standing to assert his FCRA claims. (*Id.* at 15-17.) In addition, "Defendant also assert[ed] that Plaintiff cannot show that Defendant's alleged violation of the FCRA was 'willful' as required for recovery." (*Id.* at 17.) "Defendant also argue[d] that Plaintiff's claim for violating the FCRA's authorization requirement is duplicative of his first FCRA claim involving improper disclosure." (*Id.*) Further, Plaintiff reports that Defendant raised a statute of limitations issue. (*Id.* at 18-19.)

Given the challenges identified by Plaintiff, as well as the fact that the parties have conducted investigations and pertinent discovery allowing them to assess the strengths and weaknesses of the case, this factor weighs in favor of final approval of the Settlement.

**B.      Risks, Expenses, Complexity, and Likely Duration of Further Litigation**

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation. Plaintiff asserts:

> Given the risks outlined [], the issues in this case were complex and the risk for Plaintiff and the Class Members was high, given the uncertainty. There is significant expense associated with the class certification process, which the Parties can avoid by entering into the contemplated settlement. If the Court did eventually certify the class (other than for purposes of settlement as requested []), a class trial involving over 1,200 individuals would require the retention of expensive expert witnesses, the accrual of extensive litigation costs, and a significant time commitment by the parties. Finally, given the complexity and unsettled nature of the issues in this case, it is likely that any outcome at trial would have resulted in a lengthy and costly appeal. An appeal would result in further delay for the Class Members, who are waiting for a resolution.

(Doc. 36 at 19-20.) On the other hand, the proposed settlement provides for immediate recovery. The time and expense of continued litigation could outweigh any additional recovery. Given the risks and

uncertainties faced by Plaintiff, this factor weighs in favor of approval of the Settlement.

### C.      Risk of Maintaining Class Status throughout the Trial

Plaintiff contends that Class Counsel is reasonably confident that the Court would certify the proposed classes in this case, however, Class Counsel acknowledged the risks posed by Defendant's arguments. (Doc. 36 at 20.) Further, Plaintiff notes that decertification is always a possibility. (*Id.*) Due to the risk to the claims of Class Members, this factor supports final approval of the Settlement.

### D.      Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."  *Id.*, 688 F.2d at 625, 628.

The maximum recovery is $118,275.00. (Doc. 36 at 11; Doc. 36-3 at 6, Settlement ¶ 14.) Plaintiff believes that this settlement amount is adequate, reasonable, and in the best interests of the Settlement Class. (Doc. 36 at 20.) Plaintiff contends that there are risks and uncertainties with respect to damages. (*Id.* at 20-21.) In addition, Plaintiff argues that "the Settlement provides for payment [] now, rather than a payment many years down the road, if ever." (*Id.* at 21.) Plaintiff asserts that the Settlement is fair because the basis for recovery is the same for each Class Member, with all individuals comprising the Settlement Class eligible to receive individual payments from the Net Settlement Amount based upon the number of Class Members, and each Class Member will be bound by the same release. (*Id.* at 21-22.) Accordingly, the Court finds the amount offered supports final approval of the Settlement.

### E.      Extent of Discovery Completed and Stage of the Proceedings

Plaintiff reports that discussions between counsel for the parties, informal discovery, as well as the diligent investigation and evaluation of the claims by the parties, have permitted each side to assess the relative merits of the claims and the defenses to those claims. (Doc. 36 at 22.) In addition, according to Plaintiff, Defendant provided estimates of the number of proposed class members. (*Id.*)

Thus, it appears that the parties made informed decisions, which lead to resolution of the matter, and this factor supports final approval of the Settlement.

**F.     Experience and Views of Counsel**

In general, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. Class Counsel reports that the Settlement was negotiated by experienced counsel, who believe that it is fair and reasonable, and in the Settlement Class's best interests. (Doc. 36 at 22.) The opinion of Class Counsel that the Settlement is "fair and reasonable" is entitled to significant weight and supports approval of the settlement agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528. Additionally, Plaintiff reports that the firms of Kingsley & Kingsley APC and Davtyan Professional Law Corporation are well versed in class action litigation and have diligently and aggressively pursued this action. (Doc. 36 at 23.) Plaintiff states that Kingsley & Kingsley has focused its practice since the year 2000 on prosecuting complex wage, hour, and working condition violations, and currently serves as class counsel for dozens of pending class action actions in Northern, Central, and Southern California. (*Id.*; Doc. 36-2 at 8-14, Szamet Decl. ¶¶ 53-55.) Thus, the views of counsel support final approval of the Settlement.

**G.     Reaction of Class Members to the Proposed Settlement**

No objections were filed by Class Members following service of the Class Notice. (Doc. 36-8 at 4, Keough Decl. ¶ 14.) The Class Representative has indicated that based on his involvement in this case, he "believe[s] that the proposed settlement is a good settlement for the Class," and he "support[s] this settlement." (Doc. 36-9 at 3, Felix Decl. ¶ 8.) Although 1,133 Class Members received the Class Notice,[1] only two exclusions were returned to the Settlement Administrator. (Doc. 36-8 at 2-4, Keough Decl. ¶¶ 5, 7-8, 16.)

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529. Because no Class Members objected to the

---

[1] Ms. Keough reported that JND Legal Administration sent the Class Notice to 1,227 Class Members, but 94 remained undeliverable. (*See* Doc. 36-8 at 2-3, Keough Decl. ¶¶ 5, 7-8.)

1   Settlement and the requests for exclusion are vastly outweighed by the number of Class Members who

2   have indicated their consent to the terms of settlement, this factor weighs in favor of final approval of

3   the Settlement.

4          **H.     Collusion between Negotiating Parties**

5          The inquiry of collusion addresses the possibility that the settlement agreement is the result of

6   either "overt misconduct by the negotiators" or improper incentives of class members at the expense of

7   others. *Staton*, 327 F.3d at 960. Plaintiff reports that "the Settlement Agreement was reached after an

8   informal exchange of pertinent discovery, as well as an estimate of the number of FCRA class

9   members." (Doc. 36 at 23; Doc. 36-2 at 7, Szamet Decl. ¶ 42.) In addition, Plaintiff asserts that

10  "[f]ollowing informal discovery, the parties engaged in extensive arm's length negotiations." (Doc. 36

11  at 23; Doc. 36-2 at 7, Szamet Decl. ¶ 43.)  Because there is no indication the agreement was the product

12  of collusive conduct, this factor weighs in favor of approval of the Settlement.

13  **III.    Conclusion**

14         The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement,

15  which is fair, reasonable, and adequate as required by Rule 23. Therefore, the Court recommends final

16  approval of the Settlement Agreement be **GRANTED**.

17                    **REQUEST FOR ATTORNEYS' FEES AND COSTS**

18         Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be

19  awarded pursuant to Rule 23(h). The Settlement authorizes Class Counsel to seek attorneys' fees up to

20  33 1/3% of the Global Settlement Fund, for a total of $39,425.00. (Doc. 36-3 at 21, Settlement ¶ 12.)

21  Here, Class Counsel seeks fees totaling $39,425.00 and $931.11 in costs. (Doc. 36-1 at 7.)

22         Under the "common fund" doctrine, attorneys who create a common fund for a class may be

23  awarded their fees and costs from the fund. *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444

24  U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than

25  himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). An award

26  from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without

27  contributing to its cost are unjustly enriched at the successful litigant's expense," and as such

28  application of the doctrine is appropriate "when each member of a certified class has an undisputed and

15

mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co.*, 444 U.S. at 478. Here, the Settlement applies a distribution formula to determine the amount paid to Class Members (Doc. 36-3 at 17-18, Settlement ¶ 4), and application of the common fund doctrine is appropriate.

## I.      Legal Standards

"[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement" to determine whether it is "'fundamentally fair, adequate, and reasonable' Fed.R.Civ.P. 23(e)." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To do so, the Court must "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.*

A court "may not uncritically accept a fee request," but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case.  *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically [the] representations concerning the time expended").

The party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained.  *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000).  Therefore, a fee applicant must provide records documenting the tasks completed and the amount of time spent.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).  "Where the documentation of hours in inadequate, the district court may reduce hours accordingly."  *Hensley*, 461 U.S. at 433.

When fees are to be paid from a common fund, as here, the relationship between the class members and class counsel "turns adversarial."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  The Ninth Circuit observed:

> [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class. It is obligatory, therefore, for the trial judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.

*Id.* at 1302 (internal quotation marks, citation omitted).  As a result, the district court must assume a fiduciary role for the class members in evaluating the reasonableness of a request for fees from the common fund.  *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("when fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

The Court may use either a lodestar or percentage calculation to evaluate a fee request. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (holding both a lodestar and percentage calculations "have [a] place in determining what would be reasonable compensation"); *Lafitte v. Robert Half Int'l Inc.,* 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts.").

## A.     Lodestar method

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida*, 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Lafitte*, 1 Cal. 5th at 489.  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  Next, the Court may adjust the lodestar upward or downward using a "multiplier" considering the following factors adopted by the Ninth Circuit in a determination of the reasonable fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  However, the Court has since suggested that the fixed or contingent nature of a fee and the "desirability" of a case are no longer

relevant factors. *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095, n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992)).

### B.    Percentage from the common fund

As the name suggests, under this method, "the court makes a fee award on the basis of some percentage of the common fund." *Florida*, 915 F.2d at 545 n. 3. In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 30% of the total settlement value, with 25% considered the benchmark. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon*, 150 F.3d at 1029 (observing "[t]his circuit has established 25 % of the common fund as a benchmark award for attorney fees"). The percentage may be adjusted below or above the benchmark, but the Court's reasons for adjustment must be clear. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

When assessing whether the percentage requested is reasonable, courts may consider a number of factors, including "(1) the results obtained for the class; (2) the risk undertaken by counsel; (3) the complexity of the legal and factual issues; (4) the length of the professional relationship with the client; (5) the market rate; and (6) awards in similar cases." *Romero v. Produces Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, at *8-9 (E.D. Cal. Nov. 14, 2007) (citing *Vizcaino*, 290 F.3d at 1048-1050; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *see also Lafitte*, 1 Cal. 5th 480 (determining the reasonableness of percentage fee through considering "the risks and potential value of the litigation;" the "contingency, novelty and difficulty" of the case; and "the skill shown by counsel, the number of hours worked, and the asserted hourly rates").

## II.    Evaluation of the Fees Requested

"The district court has discretion to use the lodestar method or the percentage of the fund method in common fund cases." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)). Notably, the Court must consider similar factors under either method. *See Kerr*, 526 F.2d at 70; *Vizcaino*, 290 F.3d at 1048-1050. Further, the Court may "appl[y] the lodestar method as a crosscheck" to determine whether the amount requested is reasonable. *Vizcaino*, 290 F.3d at 1050, n.5.

///

### A.      Time and labor required

Class Counsel report they have worked 87.4 hours on this case. (Doc. 36-1 at 11, Doc. 36-2 at 15, Szamet Decl. ¶ 61.) There is no evidence that Class Counsel were precluded from other work because of the pendency of this litigation. Nevertheless, the time expended by Class Counsel supports an award of the fees requested.

### B.      Results obtained for the class

Courts have recognized consistently that the result achieved is a major factor to be considered in making a fee award. *Hensley*, 461 U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). Class Counsel asserts that they "recovered $118,275.00 on behalf of the Settlement Class, that the class members would likely not have recovered independent of this action." (Doc. 36-1 at 10.) According to Ms. Keough, the recovery for Class Members will be approximately between $37.38 and $74.76. (Doc. 36-1 at 10; Doc. 36-8 at 5, Keough Decl. ¶ 18.) Though this is a fairly insignificant amount, the fact that the members would likely have not received anything absent this litigation, this factor supports an award of the fees requested.

### C.      Risk undertaken by counsel

The risk of costly litigation and trial is an important factor in determining the fee award. *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994). The Supreme Court explained, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

There is no evidence that Class Counsel faced extreme risks in pursuing this litigation. For example, in *Vizcaino*, the plaintiffs "lost in the district court—once on the merits, once on the class definition" and the class counsel twice "succeeded in reviving their case on appeal." *Id.*, 290 F.3d at 1303. The court found the pursuit of the case was "extremely risky" given the "absence of supporting precedents" and the challenges faced in the appeals. *Id.* As such, the risks supported an award of fees slightly above the benchmark. *Id.* at 1048-49. In contrast, here, though Defendant denied liability, Class Counsel were not faced with a challenge to merits of the claims or the propriety of class certification. On the other hand, Class Counsel discusses that "the changing and uncertain legal environment for

Article III standing for claims under the FCRA made the ultimate outcome of this litigation uncertain." (Doc. 36-1 at 10.) Class Counsel further contends that "there is uncertainty surrounding Plaintiff's ability to prove his claims given the unpredictability associated with class certification as well as complex jury trials." (*Id*.) Additionally, Class Counsel asserts that "Class Counsel has borne the entire risk and costs of this litigation, all on a pure contingency basis." (*Id*. at 11; Doc. 36-2 at 15, Szamet Decl. ¶ 60.) Based upon these facts, this factor supports the requested fees.

**D.      Complexity of issues and skill required**

The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award. *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *14-15 (E.D. Cal. Sept. 2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court observed the case involved "complex issues of constitutional law in an area where considerable deference is given to jail officials," and the action "encompassed two categories of class members"); *see also In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award.").

Class Counsel asserts that they "showed great skill, thoroughness, and diligence in investigating and developing the claims, liability theories, and estimated possible recoveries in this litigation." (Doc. 36-1 at 10-11; Doc. 36-2 at 15, Szamet Decl. ¶ 58.) In addition, Class Counsel states they "have many years of experience litigating complex class action cases in the employment and consumer context." (Doc. 36-1 at 11.) Class Counsel further contends that "the legal issue of Article III standing is cutting-edge [and] complex." (*Id*.) Indeed, the Court finds Class Counsel displayed skills consistent of those that would be expected of attorneys of comparable experience. Therefore, this factor supports the requested fee award.

**E.      Length of professional relationship**

Class Counsel does not address the length of the professional relationships. Class Counsel initiated this action on behalf of Plaintiff on March 7, 2019. (Doc. 1.) The parties reached a proposed class action settlement on September 6, 2019 through arms-length, direct negotiations. (Doc. 36 at 10, Doc. 36-2 at 3, Szamet Decl. ¶ 8.) The short duration of the professional relationship may warrant an

20

1   award below the benchmark. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311

2   (9th Cir. 1990) (finding "the 25 percent standard award" was appropriate although "the litigation lasted

3   more than 13 years").

4       **F.    Awards in similar cases**

5       Previously, this Court observed that "[t]he typical range of acceptable attorneys' fees in the

6   Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."

7   *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Barbosa v. Cargill Meat Solutions Corp.*, 297

8   F.R.D. 431, 448 (E.D. Cal. 2013). Thus, the amount requested by Class Counsel is at the highest range

9   of percentages from the common fund. *See id.*

10      Class Counsel has not identified similar cases demonstrating the fees requested are comparable

11  to those awarded previously by this Court. As examples, the results obtained in the *Rodriguez* and

12  *Morales* settlements were much more beneficial to the class members than the estimated awards for

13  class members in this action. In *Morales,* the average award for class members was "over $4,300" for

14  each class member. *Morales*, 2013 WL 1222058 at *2 (E.D. Cal. Mar. 25, 2013). The Court found this

15  was "a significant recovery" that weighed in favor of a higher award. *Id.* Similarly, in *Rodriguez*, the

16  average award was approximately $2,200 award per worker, and "the highest award [was] estimated to

17  be approximately $17,300." *Rodriguez*, 2013 WL 2146927 at *13 (E.D. Cal. May 15, 2013). The Court

18  determined such results were significant and weighed in favor of an award higher than the benchmark.

19  *See Morales*, 2013 WL 1222058 at *2; *Rodriguez*, 2013 WL 2146927 at *13. In contrast, here, the

20  recovery for class members will be approximately between $37.38 and $74.76. (Doc. 36-1 at 10; Doc.

21  36-8 at 5, Keough Decl. ¶ 18.) Given the disparity in the results achieved, the Court does not find this

22  compares favorably to these cases to support the reward requested.

23      **G.    Lodestar crosscheck and market rate**

24      In general, the first step in determining the lodestar is to determine whether the number of hours

25  expended was reasonable. *Fischer*, 214 F.3d at 1119; *Lafitte*, 1 Cal. 5th 480. However, when the

26  lodestar is used as a cross-check for a fee award, the Court is not required to perform an "exhaustive

27  cataloguing and review of counsel's hours." *See Schiller*, 2012 WL 2117001 at *20 (citing *In re Rite*

28  *Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir.2005); *In re Immune Response Sec. Litig.*, 497

1  F.Supp.2d 1166 (S.D. Cal. 2007)). With the hours reported, Class Counsel reports its lodestar is

2  $42,900.50. (Doc. 36-1 at 12, Doc. 36-2 at 16, Szamet Decl. ¶ 64.)

3       Significantly, however, the hourly fees used to calculate this amount—ranging from $325 to

4  $825 per hour— must be reduced to reflect the market rate within this community. The Supreme Court

5  explained that attorney fees are to be calculated with "the prevailing market rates in the relevant

6  community." *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984). In general, the "relevant

7  community" for purposes of determining the prevailing market rate is the "forum in which the district

8  court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is

9  filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California,

10 Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . ." *See Jadwin v.

11 County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

12      The fee applicant bears a burden to establish that the requested rates are commensurate "with

13 those prevailing in the community for similar services by lawyers of reasonably comparable skill,

14 experience, and reputation." *Blum*, 465 U.S. at 895 n.11. The applicant meets this burden by

15 "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested

16 rates are in line with those prevailing in the community for similar services by lawyers of reasonably

17 comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11; *see also Chaudhry v. City of

18 Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and

19 other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the

20 prevailing market rate.") Though Class Counsel asserts their hourly rates "are fair and reasonable

21 and are comparable to or less than those charged by [their] colleagues in California and the national

22 market for prosecuting or defending class actions" (Doc. 36-2 at 19, Szamet Decl. ¶ 73), they fail to

23 identify any case within the Eastern District approving their hourly rates.

24      The hourly rates sought by attorneys on this action range from $325 to $825 per hour. (Doc. 36-

25 2 at 22, Szamet Decl. ¶ 88.) Class Counsel asserts that these "hourly rates are fully supported by their

26 experience and reputation in handling complex employment litigation, including wage and hour class

27 actions." (*Id.*, ¶ 89.) Class Counsel also contends that their rates "are commensurate with the prevailing

28 market rates in Los Angeles County for attorneys of comparable experience and skill handling complex

litigation" and "are in line with the Laffey Matrix." (*Id.*, ¶¶ 90, 93.) The Laffey Matrix is "a widely recognized compilation of attorney and paralegal rates used in the District of Columbia, and frequently used in determining fee awards." *Schiller,* 2012 WL 2117001 at *21. Nevertheless, this Court has rejected rates based upon the Laffey Matrix, finding that "the hourly rate[] generally accepted in the Fresno Division for competent experienced attorneys is between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 U.S. Dist. LEXIS 174366, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 17, 2014) (citing *Willis v. City of* Fresno, 2014 U.S. Dist. LEXIS 97564 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co*., 2014 U.S. Dist. LEXIS 84359 (E.D. Cal. June 19, 2014)). Likewise, this Court found the Laffey Matrix is "'irrelevant to determining reasonable hourly rates for' counsel in the Eastern District of California[.] The Laffey Matrix also fails to account for differences in hourly rates depending on the area of practice." *Johnson v. Wayside Property, Inc*., 2014 WL 6634325 at * 7 (E.D. Cal. Nov. 21, 2014).

The requested rates exceed those generally found reasonable in the Eastern District.  *See Fitzgerald*, 2013 WL 1627740, n.5.  The Sacramento Division has awarded hourly rates ranging from $150 for new and inexperienced lawyers to $450 per hour to the most experienced.[2]  *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 373-374 (E.D. Cal. 2014) ("[a] reasonable rate for associates working in this community is typically between $150 and $175 per hour," and awarding $400 for partners and $175 to associates); *AT&T Mobility LLC v. Yeager*, 2018 WL 1567819 at *4-5 (E.D. Cal. Mar. 30, 2018) (observing that "[i]n the Sacramento division, the average rate for junior associates is between $150 and $175," and the requested rate of $600 by an attorney who had experience exceeding twenty years was "unreasonably high for this forum," and reducing the award to $300 per hour due to the simplicity of the work required); *Eagle Sys. & Servs. v. Int'l Assoc. of Machinists*, 2017 WL

---

[2] As noted, these hourly rates are comparable to those awarded in the Fresno Division.  This Court previously reviewed the billing rates for the Fresno Division of the Eastern District and determined that for attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014). In addition, "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Id.*; *see also Roach v. Tate Publ'g & Enter*., 2017 WL 5070264 at *9 (E.D. Cal. Nov. 3, 2017) ("attorneys with experience of twenty or more years of experience are awarded $350 to 400 per hour").

1213373 at *3 (E.D. Cal. Mar. 31, 2017) ("judges in this district accept rates between $400 and $450 for partners with 20 to 35 years of experience") (collecting cases). With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.[3]

The hours for Eric Kingsley, who has been practicing for more than twenty years, will be calculated at a rate of $450 per hour. For Kelsey Szamet, who has been practicing since 2008, the hourly rate is adjusted to $375 per hour. Finally, the hourly rate for Justin Aufderhar and Jessica Adlouni, who have been practicing for less than five years, is adjusted to $200 per hour. With the rate adjustments to prevailing market rates, the lodestar amount is reduced to a total of $26,395.00.

| LEGAL PROFESSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Eric B. Kingsley | 6.40 | $450 | $2,880.00 |
| Kelsey M. Szamet | 41.80 | $375 | $15,675.00 |
| Justin Aufderhar | 22.10 | $200 | $4,420.00 |
| Jessica Adlouni | 17.10 | $200 | $3,420.00 |
| | | | $26,395.00 |

## III.   Amount of Fees to be Awarded

There is a strong presumption that the lodestar is a reasonable fee. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978. As a result, "a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal punctuation and citations omitted). Nevertheless, the Ninth Circuit observed that the lodestar is "routinely enhanced . . . to reflect the risk of non-payment in common fund cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1300.  The Court does not find that the issues involved in this case or the fact that it is a common fund case, justifies a multiplier.

Accordingly, because the lodestar crosscheck results in an amount below the 25% benchmark

---

[3] Although rates outside of the relevant forum may be employed if local counsel is unavailable, Plaintiff's counsel do not assert that local counsel was unavailable. Thus, they fail to meet their burden to show that hourly rates other than those of the Fresno Division should be used for purposes of calculating the lodestar. *See Camacho, 523 F.3d at 979; Barjon v. Dalton*, 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and instead reduced the award to the hourly rates in the relevant community).

and due to the fairly insignificant recovery for the class, the Court recommends the benchmark of 25%
of the fund in the amount of $29,568.75 be **GRANTED**.

## **REQUESTS FOR COSTS**

### **I.      Litigation Costs**

Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil
Procedure 54. Attorneys may recover reasonable expenses that would typically be billed to paying
clients in non-contingency matters. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Here,
Plaintiff's counsel seeks a total reimbursement of $931.11 for costs incurred in the course of this
action. (Doc. 36-1 at 13; Doc. 36-2 at 22-23, Szamet Decl. ¶ 94.) Class Counsel reports they have
"incurred costs for filing fees, postage and legal research." (Doc. 36-1 at 13; Doc. 36-2 at 23, Szamet
Decl. ¶ 96.)

Previously, this Court noted costs "includ[ing] filing fees, mediator fees . . . , ground
transportation, copy charges, computer research, and database expert fees . . . are routinely reimbursed
in these types of cases." *Alvarado v. Nederend*, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17,
2011). Accordingly, the Court recommends Class Counsel's request for litigation costs in the amount
of $931.11 be **GRANTED**.

### **II.      Costs of Settlement Administration**

Previously, the Court ordered that "[c]osts of settlement administration shall not exceed
$18,500." (Doc. 29 at 17.) Under the terms of the Settlement, the Settlement Administrator was
"responsible for establishing the Settlement Fund and issuing (a) all funds by way of negotiable
instrument from the Global Settlement Fund, (b) W-9 Forms (if required), (c) 1099 forms; and (d) all
required notices under the Class Action Fairness Act 2005, 28 U.S.C. § 1711, *et seq*." (Doc. 36-3 at 21,
Settlement ¶ 11.) The Settlement authorizes that "[t]he Settlement Administrator's fees shall be paid
from the Global Settlement Fund." (*Id*.)

The administrative expenses requested are within the range of previous costs for claims
administration awarded in this District. *See, e.g., Bond v. Ferguson Enterprises, Inc.*, 2011 WL
2648879, at *8 (E.D. Cal. June 30, 2011) ($18,000 settlement administration fee awarded in wage an
hour case involving approximately 550 class members); *Vasquez v. Coast Valley Roofing*, 266 F.R.D.

482, 483-84 (E.D. Cal. 2010) ($25,000 settlement administration fee awarded in wage and hour case involving approximately 170 potential class members). Accordingly, the Court recommends that the request for $18,500 in expenses for the settlement administration by JND Legal Administration be **GRANTED**.

### PLAINTIFF'S REQUEST FOR AN INCENTIVE AWARD

Plaintiff seeks an incentive award of $5,000 for his actions as the class representative. (Doc. 36-1 at 13-14.) In the Ninth Circuit, a court has discretion to award a class representative a reasonable incentive payment. *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463. Incentive payments for class representatives are not to be given routinely. In *Staton*, the Ninth Circuit observed:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

*Id.* at 975. In evaluating a request for an enhanced award to a class representative, the Court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Id.* at 977. Further, incentive awards may recognize a plaintiff's "willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

**I.     Actions taken to benefit the class and time expended**

Plaintiff reports that he spent significant time throughout this class action working with Class Counsel. (Doc. 36-9 at 2, Felix Decl. ¶ 4.) Specifically, Plaintiff reports that "before filing this action, in early 2019, [he] spent a lot of time researching competent counsel that [he] believed could best represent the interests of the Class Members." (*Id.*) Plaintiff states that he then "spent time assisting and working with [counsel] by investigating and gathering information, including discussing [his] work experience and the experience of others that [he] observed while working for Bolthouse and providing all relevant employment documents in [his] possession." (*Id.*) In addition, Plaintiff reports that after the

lawsuit was filed, he "maintained regular contact with [his] attorneys to discuss the status of the case and regularly check in about the case's progress," and he made himself available as needed. (*Id*., ¶ 5.) Plaintiff further reports that after the settlement was reached, he reviewed the final settlement agreement and discussed the settlement and next steps with his attorneys. (*Id*. at 3, ¶ 7.)

Notably, Plaintiff would have taken many of these same actions if prosecuting this action on behalf of himself as an individual, rather than as a class representative. Nevertheless, undoubtedly, his actions benefitted the class such that they weigh in favor of an incentive payment.

## II.   Fears of workplace retaliation

Plaintiff does not contend he feared retaliation for their connections to this action, and because Plaintiff is a former employee of Defendant, retaliation is not possible. (*See* Doc. 36-9 at 2, Felix Decl. ¶ 2.) Further, there is no support for Plaintiff's speculation that it is possible that his involvement in this matter could make it more difficult for him to obtain employment in the field. (*Id*. at 2-3, ¶ 6.) Thus, this factor does not support an incentive payment to Plaintiff.

## III.   Reasonableness of Plaintiff's request

Considering the actions taken by Plaintiff and the time expended, an incentive award is appropriate. In determining the amount to be awarded, the Court may consider the time expended by the class representative, the fairness of the hourly rate, and how large the incentive award is compared to the average award class members expect to receive. *See, e.g., Ontiveros v. Zamora*, 2014 WL 5035935 (E.D. Cal. Oct. 8, 2014) (evaluating the hourly rate the named plaintiff would receive to determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 U.S. Dist. LEXIS 72250, at *5 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably close to the average per class member amount to be received); *Alvarado*, 2011 WL 1883188 at *10-11 (considering the time and financial risk undertaken by the plaintiff).

### A.   Time expended

In *Alvarado*, the Court noted the class representatives "(1) travelled from Bakersfield to Sacramento for mediation sessions; (2) assisted Counsel in investigating and substantiating the claims alleged in this action; (3) assisted in the preparation of the complaint in this action; (4) produced evidentiary documents to Counsel; and (5) assisted in the settlement of this litigation."  *Id*., 2011 WL

1883188 at *11.  Further, the Court noted the plaintiffs "undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for the costs awarded in favor of the Defendant."  *Id.*  In light of these facts, the Court found an award of $7,500 for each plaintiff was appropriate for the time, efforts, and risks undertaken.

Likewise, in *Bond*, the Court found incentive payments of $7,500 were appropriate for the two named plaintiffs who: "(1) provided significant assistance to Class Counsel; (2) endured lengthy interviews; (3) provided written declarations; (4) searched for and produced relevant documents; (5) and prepared and evaluated the case for mediation, which was a full day session requiring very careful consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the Class."  *Bond*, 2011 WL 2648879, at *15.  On the other hand, the Northern District determined class representatives failed to justify incentive awards of $10,000 although the plaintiffs reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the settlement." *Wade v. Minatta Transport Co.*, 2012 U.S. Dist. LEXIS 12057, at *3 (N.D. Cal. Feb. 1, 2012).

In this case, Plaintiff seeks an award that is less than the amount of the incentive awards approved in the cases discussed above. However, Plaintiff did not suffer the inconvenience of traveling for and participating in mediation. Furthermore, though Plaintiff assisted with the investigation and gathering of information, he did not "endure lengthy interviews" and was not required to submit to a deposition. Consequently, an award of $5,000 is excessive.

**B.    Fairness of the hourly rate**

Previously, this Court criticized a requested award of $20,000 where the plaintiff estimated "he spent 271 hours on his duties as class representative over a period of six years," because the award would have compensated the class representative "at a rate of $73.80 per hour." *Ontiveros*, 2014 WL 5035935 at *5-6. The Court explained that "[i]ncentive awards should be sufficient to compensate class representatives to make up for financial risk . . . for example, for time they could have spent at their jobs." *Id.* at *6 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). The Court found an award of "$50 per hour fairly compensate[] the named plaintiff for his time and incorporates an extra incentive to participate in litigation," considering that the plaintiff's hourly flat

rate while employed by the defendant was $15 per hour. *Id.* at *6; n.3. Nevertheless, the Court increased the award from $13,550 (calculated with $50 per hour for the 271 hours) to $15,000 because "Mr. Ontiveros relinquished the opportunity to bring several of his own claims." *Id.* at *6.

With an estimated 30 hours of tasks taken by Plaintiff, the requested award of $5,000 would compensate Plaintiff at a rate of $166.67 per hour. If the Court were to adopt the $50 per hour rate approved in *Ontiveros*, Plaintiff's incentive award would be reduced to $1,500.

### C.      Comparison of the award to those of the Class Members

In *Rankin*, the Court approved an incentive award of $5,000, where the "[p]laintiff retained counsel, assisted in the litigation, and was an active participant in the full-day mediation." *Id.*, 2011 U.S. Dist. LEXIS 72250, at *5. The Court found the amount reasonable, in part because "the sum is reasonably close to the average per class member amount to be received." *Id.* In contrast, here Plaintiff seeks an award of $5,000, while the recovery for Class Members will be approximately between $37.38 and $74.76. (Doc. 36-1 at 10; Doc. 36-8 at 5, Keough Decl. ¶ 18.)  Thus, the requested incentive award is disproportionate to the awards Class Members expect to receive.

### IV.     Amount to be awarded

Plaintiff clearly expended efforts on behalf of the class, he researched competent counsel, assisted attorneys by investigating and gathering information, and made himself available as needed. (Doc. 36-9 at 2-3, Felix Decl. ¶¶ 4-5, 7.)  However, expending 30 hours is not such a great burden and is clearly much less than he would have had to have expended had he prosecuted the action for himself alone. Thus, the Court finds $1,500 is an appropriate incentive award. This represents more than 20 times what the highest paid class member will receive. Thus, the Court recommends that Plaintiff's request for an incentive payment be **GRANTED** in the modified amount of $1,500.

### FINDINGS AND RECOMMENDATIONS

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable, and the factors set forth by the Ninth Circuit weigh in favor of final approval of the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2); *Staton*, 327 F.3d at 959.

Accordingly, the Court **RECOMMENDS**:

1.      Plaintiff's motion for final approval of the Settlement Agreement be **GRANTED**;

2.   Plaintiff's request for certification of the Settlement Class be **GRANTED** and defined as:

> All applicants in the United States who filled out WM. BOLTHOUSE FARMS, INC.'s standard 'Consent to Request Consumer Report & Investigative Consumer Report Information' form as administered by Sterling Infosystems Inc. during the Class Period.

3.   Class Counsel's motion for attorneys' fees be **GRANTED** in the amount of $29,568.75, which is 25% of the gross settlement amount;

4.   Class Counsel's request for costs be **GRANTED** in the amount of $931.11;

5.   The request for fees for the Settlement Administrator JND Legal Administration be **GRANTED** in the amount of $18,500.00;

6.   Plaintiff's request for class representative incentive payment be **GRANTED** in the modified amount of $1,500.00;

7.   The action be dismissed with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the Settlement and ordered by the Court; and

8.   The Court retain jurisdiction to consider any further applications arising out of or in connection with the Settlement.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

///

///

1    The parties are advised that their failure to file objections within the specified time may waive

2  the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991);

3  *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

4

5  IT IS SO ORDERED.

6    Dated:   __May 3, 2020__                    _____ /s/ Jennifer L. Thurston__

7                                        UNITED STATES MAGISTRATE JUDGE

31